kpmg

**Radianz Limited**

# Radianz 2000 Stock Option Plan : Rules
Adopted by shareholders' Board resolution on
14 June 2000

and as amended by the A and B directors on
30 June 2000
and as amended by the Board on 17 March 2005

KPMG

ref: mac/eig/reuters-ss/Proton_rules8_clean.doc

Doc 13

**EXHIBIT B**

*Radianz 2000 Stock Option Plan : Rules*
*14 June 2000 and as amended by the A and B*
*Directors on 30 June 2000*

# Contents

| | | |
|---|---|---|
| 1 | Definitions | 1 |
| 2 | Grant of Options | 8 |
| 3 | Limitations on Grant | 10 |
| 4 | Exercise of Options | 11 |
| 5 | Trade sales, Reconstructions, Liquidations and Option Exchanges | 14 |
| 6 | Variation of Share Capital | 20 |
| 7 | Manner of Exercise of Options | 21 |
| 8 | Administration and Amendment | 24 |
| 9 | Miscellaneous | 26 |

*Radianz Limited*
*Radianz 2000 Stock Option Plan : Rules*
*14 June 2000 and as amended by the A and B*
*Directors on 30 June 2000*

# 1     Definitions

1.1     In these Rules the following words and expressions shall have, where the context so admits, the following meanings:

"Adoption Date"                the date on which the Plan is adopted by an ordinary resolution of the Company;

"Associated Company"           a company is to be treated as another company's associated company if at that time one of the two has Control of the other, or both are under the Control of the same person or persons;

"Auditors"                     the auditors for the time being of the Company (acting as experts and not as arbitrators);

"Board"                        the board of directors of the Company or a duly constituted committee thereof at which a quorum is present;

"Code of Practice"             the code of practice or regulation governing transactions in securities by directors published from time to time by the Relevant Exchange or any code of practice adopted by the Board in addition to or replacement of such publication:

"the Company"                  Radianz Limited or, save for Rules 1, 2, 3 and 8.3, such company as shall be at any time the "New Company" or the "Acquiring Company" as defined in Rule 5.6;

"Compensation Committee"       the Board or a duly authorised committee appointed by the Board to oversee the operation of this Plan and which shall include two directors of the Company one of whom must be an A Director and one of whom must be a B Director (as those terms are defined in the Shareholders' Agreement dated 22 May 2000 and such other individuals (who are not required to be directors of the Company) as are appointed by the Board;

"Compromise or Arrangement"    a compromise or arrangement (including a reorganisation of the Company's share capital by the consolidation of shares of different classes or by the division of shares into shares of different classes or by both of those methods but not including a compromise or arrangement which

falls within Rule 5.1) between the Company and its members or creditors or any class of either which has been approved:

(a) prior to an IPO by not less than 100% of the members; and

(b) post an IPO by not less than 75% in value of the creditors or members or class of either who vote on such compromise or arrangement;

"Control"
in relation to a body corporate ("the Body Corporate") the power of a person to secure:

(a) by the holding of shares or the possession of voting power in or relation to the Body Corporate or any other body corporate; or

(b) by virtue of any power conferred by the certificate of incorporation, articles of association, by laws, membership agreement or other document regulating the Body Corporate or any other body corporate

that the affairs of the Body Corporate are conducted in accordance with the wishes of that Company and the expression "100% Control" for the purposes of this Plan shall mean the holding direct or indirect of 100% of the ordinary share capital of the Company (other than the Shares) by any person or persons acting in concert;

"Date of Grant"
the date on which an Option, is granted to an Eligible Employee under the Plan or which is treated as being granted pursuant to Rule 2.6;

"Eligible Employee"
an executive director or employee (whether contracted to work full time or part time) of any Group Company or any other company in the RGP group provided that an executive director of RGP shall not be an Eligible Employee unless and until this Plan has been approved by the shareholders of RGP in general meeting;

"Equant"
Equant Finance B.V.

"Exercise Price"
the amount as determined by the Company which an Option Holder shall pay to acquire a Share on the exercise of an Option being, subject to

C:\Documents and Settings\skusin\Local Settings\Temporary Internet Files\OLK3\April 05
Amend for Grants Before 12 1 03.doc

2

Rule 2.6 and Rule 6, in the case of an Option to Subscribe not less than the higher of:

(a) Market Value; and

(b) the nominal value of a Share

on the Date of Grant;

and in the case of an Option to Purchase not less than the Market Value of a Share on the Date of Grant

"Exit"

the earlier of:

(a) an IPO; and

(b) an event within Rule 5.2.1 or Rule 5.3 unless the Board has made a determination in accordance with Rule 5.5 in respect of that event;

"Form of Renunciation"

the form of renunciation in the form agreed by the Board or the Compensation Committee from time to time;

"Grant Period"

(a) prior to an IPO any period during which the Compensation Committee consider it appropriate to grant Options;

(b) on or after an IPO any period during which, in accordance with the Model Code or any equivalent thereof relevant to the Recognised Exchange on which Shares are traded, Options could be granted by the Company to a director or employee within the Group;

"Grantor"

in the case of an Option to subscribe, the Company and in the case of an Option to Purchase, the Trustee;

"Group"

the Company and its Subsidiaries and the phrase "Group Company" shall be construed accordingly;

"IPO"

the listing of or the granting of an application for the dealing in the Company's Shares (or any other shares or interests in the Company or any other company (including the New Company) into which such Shares are converted in anticipation of

an IPO) on any Recognised Exchange whereby such Shares or shares can be freely traded and the approval for such dealings becomes effective whether such listing or admission to trading is effected by way of an offer for sale, a new issue of shares, an introduction, a placing or otherwise;

"Ill Health or Disability"      the cessation of employment or office by reason of ill health or disability provided the Group Company which employs the relevant individual is satisfied, on production of such evidence as it may reasonably require:

(a)  that that individual has ceased to exercise and, by reason of ill health or disability, is incapable of exercising that office or employment; and

(b)  that that individual is likely to remain so incapable for the foreseeable future;

"Letter of Grant"      the letter in the form agreed by the Board or the Compensation Committee from time to time;

"Market Value"      (a)  On any day prior to an IPO, the market value of a Share (or, as the context requires a share in the Acquiring Company or New Company) as determined by an independent third party valuation;

(b)  on any day on or after an IPO, the average closing middle market quotation of a Share (or, as the context requires a share in the Acquiring Company or New Company) as derived from the list of daily prices of a Share on the Recognised Exchange on which the Shares are traded on the three dealing days which immediately precede that day;

"New Company"      an Associated Company of the Company or of RGP which has entered into arrangements with the Company and/or the Trustee to enable the grant of New Options over shares in the New Company for the purposes of a pre IPO reorganisation of the Company's group in anticipation of the IPO of the New Company;

"New Option"      an option over shares in the Acquiring Company (as defined in Rule 5.6 ) or , as the case may be,

C:\Documents and Settings\skusin\Local Settings\Temporary Internet Files\OLK3\April 05
Amend for Grants Before 12 1 03.doc

4

Case 1:06-cv-14218-PKC    Document 1-3    Filed 12/07/2006    Page 8 of 29
*Radianz 2000 Stock Option Plan : Rules*
*14 June 2000 and as amended by the A and B*
*Directors on 30 June 2000*

over shares in the New Company granted in consideration of the release of a Subsisting Option and which shall satisfy the following conditions:

(a) that it is a right to acquire such number of shares in the Acquiring Company as has on the acquisition of the New Option an aggregate Market Value equal to the aggregate Market Value of the Shares subject to the Option on its release; and

(b) that it has an exercise price per share such that the aggregate price payable on the complete exercise of the New Option equals the aggregate price which would have been payable on the complete exercise of the Option;

"Notice of Exercise"           the notice of exercise in the form agreed by the Board or the Compensation Committee from time to time;

"Option"           a right to acquire Shares granted or to be granted pursuant to Rules 2.1 or 2.6 and the term "Option" shall be construed to mean either "Option to Purchase" or "Option to Subscribe" or both as the context requires;

"Option Certificate"           the option certificate in the form agreed by the Board or the Compensation Committee from time to time;

"Option Holder"           an Eligible Employee who has been granted and remains entitled to a Subsisting Option or (where the context admits) his legal personal representative(s);

"Option to Purchase"           an Option to acquire Shares granted by the Trustee with the intention that it be satisfied by the transfer of Shares by or at the direction of the Trustee;

"Option to Subscribe"           an Option to acquire Shares granted by the Company, with the intention that it be satisfied by the issue of new Shares by the Company;

"this Plan"           this Plan constituted and governed by the Rules with and subject to any amendments thereto properly effected;

C:\Documents and Settings\skusin\Local Settings\Temporary Internet Files\OLK3\April 05 Amend for Grants Before 12 1 03.doc

5

| | |
|---|---|
| "Recognised Exchange" | the London Stock Exchange Limited, the New York Stock Exchange, NASDAQ or any other stock exchange or investment exchange which the Board shall resolve is to constitute a Recognised Exchange for the purposes of this Plan; |
| "Retirement" | the cessation of employment or office by reason of retirement at normal retirement age or at such other age as may be agreed by the Group Company which employs the relevant individual, provided that a cessation of employment or office at an age less than 50 years shall not, for the purposes of this Plan, be or be considered to be Retirement; |
| "RGP" | Reuters Group PLC or such other company as shall from time to time be the ultimate holding company of the Reuters group of companies; |
| "RGP Group" | RGP and its Subsidiaries from time to time other than the Company and its Subsidiaries; |
| "Rules" | the rules of this Plan as amended from time to time and "Rule" shall be construed accordingly; |
| "Sale Restriction" | in respect of Options which have a Sale Restriction noted on their Option Certificates a restriction on the sale prior to the day falling 6 months (or such longer period as shall be specified at the Date of Grant of those Options) after the date of IPO of any shares acquired on the exercise of those Options provided that an Option which is acquired by the personal representatives of a deceased Option Holder shall not, notwithstanding the terms of the relevant Option Certificate, be subject to a Sale Restriction and provided further than if an Option Holder or former Option Holder whose shares are subject to a Sale Restriction dies, such Sale Restriction shall expire with effect from the day following his death; |
| "Share" | a C Ordinary Share of 0.0005 pence in the capital of the Company which is, was or will be fully paid on issue; |
| "Subsidiary" | a company which is under the Control of another company; |

C:\Documents and Settings\skusin\Local Settings\Temporary Internet Files\OLK3\April 05 Amend for Grants Before 12 1 03.doc

6

| "Subsisting Option" | an Option which has been granted and which has not been surrendered, renounced, or exercised in full nor otherwise lapsed; |
|---|---|
| "Trust" | any employee share ownership trust which has been or may be established from time to time by any Group Company to operate in conjunction with this Plan; |
| "Trustees" | the trustee or trustees for the time being of the Trust; |
| "Vesting" | an Option becoming, subject to Rule 4, capable of exercise in accordance with the Vesting Schedule (if any) specified in its Option Certificate, and the expression "Vest, "Vested" and "unVested" shall have a corresponding meaning; |

1.2    In these Rules, except insofar as the context otherwise requires:

(i)    words denoting the singular shall include the plural and vice versa;

(ii)   words importing a gender shall include every gender and references to a person shall include bodies corporate and unincorporated and vice versa;

(iii)  reference to any enactment shall be construed as a reference to that enactment as from time to time amended, modified, extended or re-enacted and shall include any orders, regulations, instruments or other sub-ordinate legislation made under the relevant enactment; and

(iv)   headings and captions are provided for reference only and shall not be considered as part of the Plan.

C:\Documents and Settings\skusin\Local Settings\Temporary Internet Files\OLK3\April 05 Amend for Grants Before 12 1 03.doc

7

# 2    Grant of Options

2.1    The Compensation Committee may in its absolute discretion select any number of individuals who shall at the intended Date of Grant be Eligible Employees and recommend the grant of Options to them.  Options may be granted at any time or times during a Grant Period but not later than the seventh anniversary of the Adoption Date.

2.2    If the Grantor is prevented by statute, order, regulation or government directive or the Code of Practice from granting Options within a Grant Period, then the Grantor may grant Options within twenty one days of the lifting of such restrictions.

2.3    The exercise of any Option may be made subject to a Vesting Schedule as determined by the Compensation Committee prior to the Date of Grant and specified on the Option Certificate relating to that Option.

2.4    To the extent that it is, or becomes lawful to do so, an Option may be granted subject to a condition (including a requirement that an Option Holder enter into an irrevocable election in a form agreed by the Inland Revenue with the relevant Group Company) that any liability of a Group Company to pay employer social security contributions or secondary national insurance contributions in respect of the exercise of that Option shall be a liability of the relevant Option Holder and payable by or recoverable from that Option Holder in accordance with Rule 7.6.

2.5    Any Option may be renounced in whole or in part by the Option Holder by completing and returning the appropriate Form of Renunciation together with the Option Certificate to the Company in which case the Option shall for all purposes be taken never to have been granted.

2.6    Where the circumstances noted in Rule 5.1 or 5.6 apply, New Options may be granted in consideration for the release of Subsisting Options granted under the Plan.  Such New Options are deemed to be equivalent to the old Options and to have been granted within the terms of this Plan.

2.7    No Option may be transferred, assigned or charged and any purported transfer, assignment or charge shall be void ab initio.  Each Option Certificate shall carry a statement to this effect.  For the avoidance of doubt, this Rule 2.7 shall not prevent the

C:\Documents and Settings\skusin\Local Settings\Temporary Internet Files\OLK3\April 05
Amend for Grants Before 12 1 03.doc

8

Option of a deceased Option Holder being exercised by personal representative(s) within the terms of these Rules.

2.8     Options shall be granted to Eligible Employees by deed. A Letter of Grant and an Option Certificate evidencing the grant shall be despatched as soon as practicable after the Date of Grant to each Participant. The Option Certificate and the Letter of Grant shall specify the Grantor, the Date of Grant, the number of Shares subject to the Option, the Exercise Price, the Sale Restrictions (if any) and the Vesting Schedule (if any).

2.9     The Option Holder shall return the counterpart copy of the Option Certificate to the Grantor within 28 days of the Date of Grant with the acknowledgement thereon signed and dated if returned via post, or fax and dated if returned via email and if such counterpart Option Certificate is not so returned then the Option shall for all purposes be taken never to have been granted.

2.10.1  Options may be granted by the Trustee only with the prior approval of the Compensation Committee.

2.10.2  Options to Subscribe shall not be granted and/or the satisfaction of Options to Purchase by the issue of new Shares in accordance with Rule 7.2 shall not take place unless and until the first to occur of:

(a)     the date on which the approval of the shareholders of RGP in general meeting has been obtained for the issue of new Shares pursuant to the Plan; or

(b)     the date on which the Relevant Exchange has confirmed in writing that the approval of the shareholders of RGP for the issue of new Shares by the Company pursuant to the Plan is not required; or

(c)     the date on which, as a result of either a change in the rules of the Relevant Exchange or in the nature of the relationship between the Company and its shareholders, the approval of the shareholders of RGP for the issue of new Shares is no longer required.

2.11    In respect of an Option which is subject to a condition under Rule 2.4 and/or to Sale Restrictions, the Option Holder, by signing and returning the counter part Option Certificate shall have and be deemed to that condition and/or to those Sale Restrictions and to be bound by them.

*Radianz 2000 Stock Option Plan : Rules*
*14 June 2000 and as amended by the A and B*
*Directors on [    ] June 2000*

# 3    Limitations on Grant

3.1    Options may be granted pursuant to Rule 2 above provided that such grant does not result in the aggregate of:

3.1.1    the number of Shares which would remain issuable or transferable on the exercise of Subsisting Options granted within the preceding ten years; and

3.1.2    the number of Shares which have been issued or transferred pursuant to the exercise of Options granted within the preceding ten years;

exceeding 15% of the total share capital of the Company in issue on the working day immediately preceding the Date of Grant.

3.2.1    In the case of Options granted to Eligible Employees who are resident in the State of California or are employed by a Group Company resident in the State of California, the maximum number of Shares over which such Options can be granted is 35,000,000 C Shares.

3.2.2    For the avoidance of any doubt, no Option shall be granted to an Eligible Employee who is resident in the State of California or employed by a Group Company resident in the State of California unless:

(a)    In the case of such an Eligible Employee who owns or has rights to acquire 10% or more of the issued share capital of the Company, the Exercise Price per Share under such Option is not less than 100% of the fair value of a Share on the Date of Grant; or

(b)    In the case of any other such Eligible Employee, the Exercise Price per Share under such Options is not less than 85% of the fair value of a Share on the Date of Grant

(c)    the Vesting Schedule (if any) relating to that Option provides that the period over which that Option Vests cannot exceed five years from its Date of Grant

# 4       Exercise of Options

4.1     Subject to each of the succeeding sections of this Rule 4, Rule 5 and Rule 7 below a Subsisting Option may be exercised in whole or in part by the Option Holder or, if deceased, by his personal representatives in whole or in part on or after the later of :

4.1.1   Vesting; and

4.1.2   an Exit;

Provided that if an Exit shall not have occurred prior to the day falling 6 years and 182 days after the Date of Grant of a Subsisting Option, that Subsisting Option may be exercised at any time thereafter until it lapses in accordance with the Rules;

4.2     A Subsisting Option which has not Vested in accordance with its normal Vesting Schedule or such part thereof as shall not have so Vested shall:

4.2.1   Vest in full immediately on the Option Holder ceasing to be a director or employee of any Group Company (so as to hold no office or employment with any Group Company) as a result of death, Ill Health or Disability;

4.2.2   not become capable of Vesting or further Vesting (as the case may be) in the event of the cessation of the Option Holder's office or employment with any Group Company for any reason other than those specified in Rule 4.2.1 above unless the Compensation Committee shall, prior to such cessation otherwise determine and, in making such determination, the Compensation Committee shall specify whether the whole or part of the Option which had not Vested prior to such cessation shall Vest;

4.3     An Option which has not Vested in accordance with its normal Vesting Schedule or Rule 4.2 above or such part thereof as shall not have so Vested shall lapse on the earliest of the following dates:

4.3.1   the surrender of the Option by the Option Holder;

4.3.2   on the date prior to Vesting on which the Option Holder ceases to be a director  or employee of any Group Company (so as to hold no office or employment with any Group Company) for any reason other than death, Ill Health or Disability unless the Compensation Committee shall have exercised its discretion under Rule 4.2.2 above,

provided that if the Compensation Committee has exercised its Rule 4.2.2 discretion in part only then the balance of the Option which has not been Vested shall lapse on the date of cessation of office or employment.

4.3.3   the date of lapse determined in accordance with Rule 5.

4.4   A Vested Subsisting Option or such part thereof as shall have Vested shall lapse on the earliest of the following:

4.4.1   the seventh anniversary of the Date of Grant or such earlier date specified at the Date of Grant;

4.4.2   the surrender of the Option by the Option Holder;

4.4.3   the later of;

(a)   the first anniversary of the Option Holder's death or twelve months following the cessation of office or employment due to Ill Health or Disability or Retirement; and

(b)   the first anniversary of an Exit.

PROVIDED that if the lapse date so determined would be a date later than the seventh anniversary of its Date of Grant, lapse shall occur on such seventh anniversary;

4.4.4   the later of:

(a)   the day falling six months after the date of cessation of the Option Holder's office or employment with any Group Company (so as to hold no office or employment with any Group Company) for any reason other than those specified in Rule 4.4.3 or 4.4.5 provided that the Compensation Committee may prior to the date of such cessation specify a longer period not exceeding 12 months to apply under this Rule 4.4.4(a); and

(b)   six months after an Exit

PROVIDED that if the lapse date so determined would be a date later than the seventh anniversary of its Date of Grant, lapse shall occur on such seventh anniversary

4.4.5    on the date that an Option Holder ceases to be a director and/or employee of any Group Company (so as to hold no office or employment with any Group Company) as a result of being dismissed for cause.    For the purposes of this Plan a statement by the Compensation Committee that an Option Holder has been dismissed for cause (including dishonesty or gross misconduct) shall be conclusive;

4.4.6    on the date on which an Option Holder, being a former officer or employee of a Group Company who holds a Subsisting Award, is notified that the Compensation Committee considers he has committed an act of post employment misconduct.    Post employment misconduct includes

(a)    any unauthorised use or disclosure of confidential information or trade secrets of the Company or any Group Company or any company within the RGP Group acquired whilst that Participant was employed by a Group Company, or any company within the RGP Group;

(b)    any other misconduct which is deemed by the Compensation Committee to be intentional misconduct adversely affecting the business or affairs of the Company or any Group Company or any Company within the RGP Group or

(c)    any breach of a covenant not to compete with or take up employment with a company in material competition with the  Company or any of its Subsidiaries which that Option Holder entered into before or at the time of his cessation of office or employment with a Group Company.

For the purposes of this Rule 4.4.6 a statement by the Compensation Committee that an Option Holder has committed an act of post employment misconduct shall be conclusive.

4.4.7    the date of lapse determined in accordance with Rule 5;.

# 5    Trade sales, Reconstructions, Liquidations and Option Exchanges

5.1    If, in anticipation of an IPO, it shall be decided by the Company and its shareholders that a New Company shall be the company whose shares are to be subject to an IPO in lieu of shares in the Company then (whether or not there is a change in Control of the Company and whether or not the New Company is under the Control of another body corporate) the Board may, notwithstanding any other terms of this Plan, determine that  all Subsisting Options shall be released and converted into New Options over shares in the New Company.

5.2    The following provisions apply on a change of control:

5.2.1    If prior to an IPO any person other than RGP or any of its Subsidiaries or Equant or any of its Subsidiaries or a New Company obtains 100% Control of the Company as a result of making an offer (whether a general offer or not) to acquire the whole of the issued share capital of the Company (other than that which is already owned by him) which is unconditional or which is made on a condition such that if it is satisfied the person making the offer will have 100% Control of the Company then, subject to Rules 5.5 and 5.7A, the Board shall notify all Option Holders as soon as is practicable of the offer in accordance with Rule 8.5. All Subsisting Options which are Vested at the date of such offer or, subject to Rule 5.7.2, which the Board determine in their discretion shall Vest as a result of the change in Control, may be exercised from 21 days after the date of the receipt of that notification up to the expiry of a period ending six months from the time when the person making the offer has obtained 100% Control of the Company and any condition subject to which the offer is made has been satisfied.  To the extent that any Subsisting Option is unexercised at the end of such period, it shall thereupon lapse;

5.2.2    If following an IPO any person obtains Control of the Company as a result of making:

(a)    an offer (whether a general offer or not) to acquire the whole of the issued share capital of the Company (other than that which is already owned by him) which is unconditional or which is made on condition such that if it is satisfied the person making the offer will have Control of the Company; or

(b)     an offer (whether a general offer or not) to acquire all the shares (other than shares which are already owned by him) in the Company which are of the same class as Shares subject to a Subsisting Option

then, subject to Rule 5.5 the Board shall notify all Option Holders as soon as is practicable of the offer in accordance with Rule 8.5. All Subsisting Options which are Vested at the date of such offer or, subject to Rule 5.7.2, which the Board determine in their discretion shall Vest as a result of the change in Control, may be exercised from 21 days after the date of the receipt of that notification up to the expiry of a period ending six months from the time when the person making the offer has obtained Control of the Company and any condition subject to which the offer is made has been satisfied. To the extent that any Subsisting Option is unexercised at the end of such period, it shall thereupon lapse

5.3     If a Compromise or Arrangement in relation to the Company takes place then, subject to Rule 5.5 all Subsisting Options which are Vested at the date  such Compromise or Arrangement is sanctioned and/or takes effect or, subject to Rule 5.7.2, which the Board shall determine in their discretion shall Vest as a result of the relevant event, may be exercised from 21 days after such date up to the expiry of a period of six months following  that date. To the extent that any Subsisting Option remains unexercised at the end of such period it shall thereupon lapse;

5.4     If any person becomes bound or entitled to acquire Shares in the Company under any provisions entitling them to buy out the Shares of minority shareholders  (the period during which  the person remains so bound or entitled being referred to as the "Relevant Period") then, subject to Rule 5.5, all Subsisting Options which are Vested on the first day of the Relevant Period or, subject to Rule 5.7.2, which the Board shall determine in their discretion shall Vest as a result of the relevant event, may be exercised from 21 days after the beginning of the Relevant Period up to the expiry of the Relevant Period and to the extent that any Subsisting Option is unexercised at the end of the Relevant Period, it shall thereupon lapse;

5.5     Notwithstanding Rules 5.2, 5.3 and 5.4 if, following an event specified in Rules 5.2, 5.3 or 5.4 ("the Relevant Event" being; the date of the offer, the date on which the Compromise or Arrangement is sanctioned and/or takes effect, or the first day of the Relevant Period respectively) the Board procures that all Subsisting Options can be

exchanged pursuant to Rule 5.6 the Board may, in its discretion, determine by written resolution that:

5.5.1    Subsisting Options do not become exercisable as a result of the Relevant Event and any Subsisting Option which is already exercisable ceases to be exercisable as from the Relevant Event;

5.5.2    an Exit has not occurred by reason of the Relevant Event; and

5.5.3    that all Subsisting Options shall be released in consideration of the Grant of a New Option in accordance with Rules 5.6 and 5.7;

Provided that if the company which is the Acquiring Company in respect of the Relevant Event fails to grant or to make a binding contractual commitment to grant the New Options pursuant to Rule 5.6 within 40 days of the Relevant Event, such resolution of the Board will cease to be effective, an Exit shall take place as at the end of that 40 day period (to the extent that an Exit had not occurred prior to the Relevant Event) and all Subsisting Options which were Vested at the Date of the Relevant Event or which the Board determine shall Vest as a result of the Relevant Event will be exercisable pursuant to Rule 5.2, 5.3 or 5.4 (as the case may be);

5.6    If as a result of the events specified in Rules 5.1, 5.2 or 5.3 the Board has required the release of a Subsisting Option in consideration for the grant of a New Option or a company has obtained Control of the Company, or if a person has become bound or entitled as mentioned in Rule 5.4, the Option Holder may, and in the case of a Board resolution under Rules 5.1 or 5.5 shall, if that other company ("the Acquiring Company", which shall where the context admits include a New Company) so agrees, release any Subsisting Option he holds in consideration of the grant of a New Option by the Acquiring Company and, if the shares of the Acquiring Company are traded on a Recognised Exchange, an Exit for the purposes of Rule 4.1.2 shall be deemed to have taken place;

5.6.1    a New Option shall be evidenced by an Option Certificate which shall import the relevant provisions of these Rules;

5.6.2    a New Option shall, for all other purposes of this Plan, be treated as having been acquired at the same time as the corresponding released Option.

*Radianz Limited*
*Radianz 2000 Stock Option Plan : Rules*
*14 June 2000 and as amended by the A and B*
*Directors on 30 June 2000*

5.7     For the purpose of any application of the provisions of this Plan following a release of a Subsisting Option and the grant of a New Option:

5.7.1   in the case of a release of a Subsisting Option and the grant of a New Option in circumstances where the Board has not made a determination in accordance with Rule 5.5, Rules 1, 4.3 and 5 to 9 (inclusive) shall apply and be deemed always to have applied to the New Option;

5.7.2   in the case of a release of a Subsisting Option and the grant of a new Option in circumstances where either Rule 5.1 applies or the Board has made a determination under Rule 5.5, all the Rules of this Plan shall apply mutatis mutandis to such New Option subject only to such amendments as the Board shall consider are necessary or appropriate to reflect the change in identity of the company over whose shares the New Options subsist or similar consequential changes. For the avoidance of doubt an Option Holder's New Option shall have the same Vested or unVested status immediately following the release and new grant as the corresponding released Options of that Option Holder and any determination made by the Board to accelerate Vesting in accordance with Rules 5.2, 5.3 or 5.4 shall be deemed not to have been made.

5.7A.1  Notwithstanding Rule 5.2.1, the Board may, in its absolute discretion, cancel all or any Subsisting Options (both Vested and unvested) in consideration for a cash payment to the Option Holder. The amount of the cash payment will be calculated on the basis of the difference between the Exercise Price of the Option being cancelled and the per share price paid by the person acquiring 100% Control of the Company, provided that, the per share price paid by the person acquiring 100% Control of the Company exceeds the Exercise Price of the Option being cancelled, however, if the Exercise Price exceeds the per share price, there will nevertheless be a cash payment of at least a nominal amount.

5.7A.2  If, following the event specified in Rule 5.2.1 (the "Relevant Event" being the date of the offer), the Board uses its discretion to cancel Subsisting Options in accordance with 5.7A.1, the Board may, in its discretion, determine by written resolution that:

5.7A.2.1 Subsisting Options do not become exercisable as a result of the Relevant Event and any Subsisting Option which is already exercisable ceases to be exercisable as from the Relevant Event;

5.7A.2.2 an Exit has not occurred by reason of the Relevant Event; and

*Radianz Limited*
*Radianz 2000 Stock Option Plan : Rules*
*14 June 2000 and as amended by the A and B*
*Directors on [     ] June 2000*

5.7A.2.3 Subsisting Options will be cancelled for a cash payment in accordance with this Rule 5.7A.

Provided that if the cash payment is not made, or a binding commitment to make the cash payment is not made, within 40 days of the Relevant Event, such resolution of the Board will cease to be effective, an Exit shall take place as at the end of that 40 day period (to the extent that an Exit had not occurred prior to the Relevant Event) and all Subsisting Options which are Vested at the Date of the Relevant Event or which the Board determine shall Vest as a result of the Relevant Event will be exercisable pursuant to Rules 5.2, 5.3 or 5.4 (as the case may be).

5.7A.3   If, as a result of an event specified in Rule 5.2.1, the Board has exercised its discretion to cancel Subsisting Options in consideration for a cash payment in accordance with Rule 5.7A.1 and has resolved as set out in Rule 5.7A.2, the Option Holder will be deemed to release any Subsisting Option he holds in consideration for the cash payment.

5.8     If notice is duly given of a general meeting at which a resolution will be proposed for the voluntary winding-up of the Company, a Subsisting Option shall to the extent Vested at the date of such notice be exercisable in whole or in part (but so that any exercise hereunder shall be conditional upon such resolution being passed) at any time thereafter until the resolution is duly passed or defeated or the general meeting is concluded or adjourned, whichever shall first occur. Immediately after any such resolution is passed Subsisting Options shall, to the extent that they are unexercised, thereupon lapse.

5.9     If notice is duly given of a general meeting at which a resolution will be proposed whereby:

5.9.1   the class of shares for the time being constituting Shares will be altered; or

5.9.2   the rights attaching to shares which for the time being constitute Shares will be altered such that shares will cease to be Shares

Subsisting Options may at the discretion of the Board be exercisable and the Board in its discretion may specify whether this provision shall apply to Vested and unVested Options or to Vested Options only (but so that any exercise hereunder shall be conditional upon such resolution being passed) at any time thereafter until such resolution is duly passed or defeated or the general meeting concluded or adjourned,

Radianz Limited
Radianz 2000 Stock Option Plan : Rules
14 June 2000 and as amended by the A and B
Directors on 30 June 2000

whichever shall first occur.   Immediately after any such resolution is passed all Subsisting Options (whether or not the Option was exercisable prior to the passing of such resolution) shall, to the extent that they are unexercised, thereupon lapse unless the Board shall have resolved to the contrary prior to the date of such resolution.

5.10    For the purpose of this Rule 5 other than Rule 5.6 a person shall be deemed to have obtained Control of a Company if he and others acting in concert with him have together obtained Control of it.

5.11    The exercise of an Option pursuant to the preceding provisions of this Rule 5 shall be subject to the provisions of Rule 7 below.

5.12    A New Option shall not be exercisable by virtue of the event on which it was granted.

5.13    For the purposes of exercising any discretions conferred upon the Board under this Rule 5, any member of the Board who is an Option Holder shall not be entitled to vote, and such discretions may only be exercised by members of the Board who are not Option Holders and, in the case of tie, the Chairman of the RGP Remuneration Committee shall have a casting vote.

# 6    Variation of Share Capital

6.1    In the event of any variation of the share capital of the Company, including, but without prejudice to the generality of the preceding words, any demerger (whether qualifying or not), capitalisation or rights issue or any consolidation, sub-division or reduction of capital the number of Shares subject to any Subsisting Option and the Exercise Price may be adjusted (including retrospective adjustments) by the Board provided that the Exercise Price for a Share subject to an Option to Subscribe shall not be reduced below its nominal value unless the Board gives an undertaking that upon exercise of such Options arrangements will be made for the capitalisation (in accordance with the Company's Articles of Association) of undistributed profits or reserves of the Company of an amount equal to the difference on any such exercise between the aggregate Exercise Price and the aggregate nominal value of the Shares to be issued upon such exercise.

6.2    Such adjustment shall be deemed to be effective, from the record date at which the respective variation applied to other shares of the same class as the Shares. Any Options exercised within that period shall be treated as exercised with the benefit of the variation.

6.3    The Grantor shall take such steps as it considers necessary to notify Option Holders of any adjustment made under Rule 6.1 and to call in, cancel, endorse, issue or reissue any Option Certificate consequent upon such adjustment.

# 7    Manner of Exercise of Options

7.1    An Option shall be exercised in whole or in part by the Option Holder or, as the case may be, his personal representatives giving notice in writing to the Company or its agent by the Notice of Exercise accompanied by the appropriate payment and the relevant Option Certificate and shall be effective on the date of the receipt of the appropriate payment and paperwork by the Company or its agent

7.2    Where an Option to Purchase is exercised the Shares subject thereto shall, subject to Rule 7.6,be transferred to or as directed by the Option Holder within 30 days of the date of exercise (or, if such transfer in such period would be prohibited by the Code of Practice, at the earliest practicable time after such prohibition is lifted) and the Trustee shall arrange for the delivery of a definitive share certificate in respect thereof. On the exercise of an Option to Purchase, the Trustees may, subject to Rule 2.10, procure that the Company issues sufficient Shares to or as directed by the Option Holder as provided for in Rule 7.3.

7.3    On the exercise of an Option to Subscribe, the number of Shares specified in the Notice of Exercise given in accordance with Rule 7.1 shall, subject to Rule 7.6, be allotted and issued credited as fully paid to or as directed by the Option Holder within 30 days of the date of exercise (or, if such allotment in such period would be prohibited by the Code of Practice at the earliest practicable time after such prohibition is lifted) and the Company shall arrange for the delivery of a definitive share certificate in respect thereof. On the exercise of an Option to Subscribe the Company may procure the transfer of sufficient Shares from the Trustee or another shareholder in the Company (in lieu of the issue of Shares by the Company) to or as directed by the Option Holder to satisfy the Option in full provided that such transfer must take place within 30 days of the date of exercise (or, if such transfer in such period would be prohibited as aforesaid, at the earliest practicable time after such prohibition is lifted) and the Company shall arrange for the delivery of a definitive share certificate in respect thereof.

7.4    Save for any rights determined by reference to a record date preceding the date of allotment or transfer, such Shares shall rank pari passu with the other shares of the same class as Shares then in issue.

C:\Documents and Settings\skusin\Local Settings\Temporary Internet Files\OLK3\April 05 Amend for Grants Before 12 1 03.doc

21

7.5    If Shares in the Company are listed on a Recognised Exchange, the Company shall apply for Shares in respect of which an Option has been exercised to be admitted to the listing, if they were not so admitted already.

7.6    If, in respect of any Option Holder, any Group Company or third party shall be

(a)    required or permitted by the law of any jurisdiction to deduct or withhold any amounts in respect of tax and/or social security and/or employees' National Insurance contributions in respect of or on account of that Option Holder's liability for the same by reason of the Options granted to him, (whether any such requirement arises at the Date of Grant of the Options or at the date of exercise of the Option or at some other date); or

(b)    if the Option Holder shall be liable personally to account for tax and/or social security and/or employees' National Insurance contributions in respect thereof; and/or

(c)    if it shall be or become lawful for the liability of an Option Holder's employing company in respect of employer's social security or secondary national insurance contributions arising as a result of the exercise of his Option to be met or refunded in whole or in part by that Option Holder;

then in any such case as specified by the Option Holder either:

7.6.1    the Option Holder shall grant to the Company the irrevocable authority, as agent of the Option Holder and on his behalf, to sell and/or retain and sell subsequently and/or procure the sale of such number of Shares subject to the Option as is sufficient to realise net proceeds sufficient to enable the relevant Group Company or third party (as the case may be) to account for such amount of tax and/or social security and/or employees' National Insurance contributions including where it is lawful, the relevant Group Company's liability for the same arising as a result of the exercise of that Option and, in the case of a sale, the Shares issued or transferred to the Option Holder upon exercise of an Option shall be reduced by the number of such Shares as have been sold or retained as mentioned above; or

C:\Documents and Settings\skusin\Local Settings\Temporary Internet Files\OLK3\April 05
Amend for Grants Before 12 1 03.doc

22

7.6.2    the Option Holder shall pay to the Company in such currency as may be required by the Company, (whether by cheque or by banker's draft) the amount necessary to satisfy such liabilities.

7.7    For the avoidance of doubt:

7.7.1    where in relation to Rule 7.6 the Option Holder opts in accordance with Rule 7.6.1, the Company shall account to the relevant Group Company or third party (as the case may be) with the net proceeds of sale for the Shares in order to enable the tax and/or social security liabilities to be settled and if, following such sale, there shall be any balance of the proceeds of sale or amount withheld not required to meet such liabilities, such balance shall be paid by the Company to the Option Holder for his own use and benefit absolutely;

7.7.2    if the Option Holder on exercise fails to specify either Rule 7.6.1 or Rule 7.6.2 or, if having specified Rule 7.6.2 he fails to make the required payment within 15 days of the date of that exercise, he shall be deemed for all purposes to have given an irrevocable authority within Rule 7.6.1.

7.8    If an Option Holder exercises an Option the Trustee or the Company may make arrangements with a third party bank or broker, to facilitate cashless exercises.

C:\Documents and Settings\skusin\Local Settings\Temporary Internet Files\OLK3\April 05
Amend for Grants Before 12 1 03.doc

23

# 8    Administration and Amendment

8.1    The Plan shall be administered by the Board whose decision shall be final;

8.2    Option Holders shall not be entitled to:

8.2.1    receive copies of accounts, circulars or notices sent to holders of Shares;

8.2.2    exercise voting rights; or

8.2.3    receive dividends

in respect of Shares which have not been issued or transferred to such Option Holders on the exercise of Options in accordance with these Rules.

8.3    The Board may from time to time amend these Rules provided that:

8.3.1    no amendment shall be effective which would materially prejudice the interests of Option Holders in relation to Options already granted to them unless with such prior consent or sanction of Option Holders is obtained as would be required under the provisions for the alteration of class rights contained in the Articles of Association of the Company for the time being if the Shares to be allotted or transferred on the exercise of the Options constituted a separate but single class of shares and such Shares were entitled to such right;

8.3.2    the provisions relating to:

(a)    Option Holders;

(b)    limitations in Rule 3 on the number of Shares subject to the Plan;

(c)    the basis for determining an Option Holder's entitlement under the Plan, the terms of such entitlement and the provisions for the adjustment of the same under the terms of Rule 6

cannot be altered to the material advantage of Option Holders without the prior approval of the Company in general meeting (except for minor amendments to benefit the administration of the Plan, to take account of a change in legislation or to obtain or

maintain favourable tax, exchange control or regulatory treatment for Option Holders, or for Participating Companies);

8.3.3    the Board may, subject to Rules 8.3.1 and 8.3.2 create sub-plans to this Plan in which it may make such amendments to the Rules as it considers necessary or desirable to operate the Plan in any jurisdictions in which Eligible Employees are situated and may implement such sub-plans in the form of schedules to the Plan applicable to the specified jurisdiction.

8.4    The cost of establishing and operating the Plan shall be borne by the Group Companies which employ the Option Holders in such proportions as the Board shall determine.

8.5    Any notice or other communication under or in connection with the Plan may be given either personally or by post or fax or email; items sent by post shall be pre-paid and shall in the case of notices or communications to the Grantor be treated as received on the day actually received by the Grantor and in the case of notices from the Grantor shall be deemed to have been received 48 hours after posting (whether by post or email).

8.6    The Board may exercise its discretion where it considers that it is necessary or desirable to do so, to provide that such Eligible Employees so designated by the Board shall receive awards which entitle them to receive a cash payment instead of Shares. Such awards will be granted on substantially the same terms as Options (save that there shall be no entitlement to receive Shares) subject to such modifications as considered appropriate by the Board.

8.7    The Board may determine at any time that no further Options be granted and may from time to time modify or at any time suspend or terminate the Plan (but without prejudice to Options already granted).

*Radianz 2000 Stock Option Plan : Rules*
*14 June 2000 and as amended by the A and B*
*Directors on [    ] June 2000*

# 9     Miscellaneous

9.1     The rights and obligations of any individual under the terms of his office or employment with any Group Company shall not, except as specifically provided under the Plan, be affected by his participation in the Plan or any right which he may have to participate therein, and an individual who participates therein shall waive any and all rights to compensation or damages in consequence of the termination of his office or employment for any reason whatsoever insofar as those rights arise or may arise from his ceasing to have rights under or be entitled to exercise any Option under the Plan as a result of such termination.

9.2     The existence of Options shall not affect in any way the right or power of the Company or its shareholders to make or authorise any or all adjustments, recapitalisation, reorganisations, reductions of capital, purchase or redemption of its own shares or other changes in the Company's capital structure or its business, or any merger or consolidation of the Company, or any issue of bonds, debentures, preferred or prior preference stock ahead of or convertible into, or otherwise affecting the Shares or the rights thereof, or the dissolution or liquidation of the Company, or any sale or transfer of all or any part of its assets or business, or any other corporate act or proceeding, whether of a similar character or otherwise.

9.3     Neither the grant of an Option nor any benefit which may accrue to an Option-Holder on the exercise thereof shall form part of that Option Holder's pensionable remuneration for the purposes of any pension scheme or similar arrangement which may be operated by any Group Company.