UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DOUGLAS GILSTRAP and MYRON TATARYN, | : | |
| each on behalf of himself and all others similarly situated, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | 05- CV- 7947 (PKC) |
| | : | |
| RADIANZ LTD., RADIANZ AMERICAS, INC., | : | |
| REUTERS LIMITED, BLAXMILL (SIX) | : | |
| LIMITED, REUTERS C LLC, | : | |
| REUTERS AMERICA LLC, and | : | |
| BRITISH TELECOMMUNICATIONS plc, | : | |
| Defendants. | : | |
| _____ | : | |
| | : | |
| DOUGLAS GILSTRAP, BRIAN DILLON | : | |
| and JOHN MADIGAN, | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | 06-CV-14218 (PKC) |
| | : | |
| RADIANZ LTD.  and RADIANZ AMERICAS, INC., | : | |
| Defendants. | : | |

## PLAINTIFFS' RESPONSE TO THE ORDER TO SHOW CAUSE

# TABLE OF CONTENTS

**Page**

I. Introduction.................................................................................................... 1

II. Procedural History ......................................................................................... 2

    A.   In December 2005, Plaintiffs Amend Their Complaint as of Right. ................................. 3

    B.   The January 30, 2006 Motion to Dismiss. ................................. 3

    C.   The Dismissal Of The Individual New York Action. ................................. 5

    D.   The Texas Lawsuit. ................................. 6

III. Argument ...................................................................................................... 7

    A.   The Anti – Injunction Act Bars This Court From Enjoining Plaintiffs' Texas Action....... 7

    B.   The United States Supreme Court Ruled The Exact Type Of Injunction Sought Here Impermissible In *Chick Kam Choo v. Exxon*................................. 8

    C.   Other Circuits Agree That Federal *Forum Non Conveniens* Dismissals Do Not Fall Within The Relitigation Exception. ................................. 9

    D.   Texas Courts Do Not Apply The Same *Forum Non Conveniens* Standard As Federal Courts................................. 14

    E.   Defendants Cite Zero Cases That Do What They Ask This Court To Do....................... 16

    F.   The Facts Of This Case Do Not Merit An Injunction Under The All Writs Act. ............ 18

        1.   The litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits. ................................. 20

        2.   The litigant's motive in pursuing the litigation, *e.g.*, does the litigant have an objective good faith expectation of prevailing?................................. 20

        3.   Whether the litigant is represented by counsel. ................................. 21

        4.   Whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel................................. 21

        5.   Whether other sanctions would be adequate to protect the courts and other parties. ... 22

    G.   This Court Cannot Modify Its Opinion To Preclude Texas Litigation............................ 22

H.   The Court Should Not Award Costs Under Rule 41 Or Its Inherent Authority ............... 22

IV. Conclusion ..................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*America Dredging Co. v. Miller,*
    510 U.S. 443 (1994) ....................................................................................... 10, 12

*Amore ex rel. Estates of Amore v. Accor, S.A.,*
    484 F. Supp. 2d 124 (D.D.C. 2007) ........................................................ 17

*Anders v. FPA Corp.,*
    164 F.R.D. 383 (D.N.J. 1995) .................................................................. 24

*Antonmarchi v. Con Edison,*
    2005 WL 3358595 (S.D.N.Y. Dec. 8, 2005) .......................................... 22

*In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak,*
    311 F.3d 488 (2d Cir. 2002) .................................................................... 12

*Atlantic Coast Line R.R. v. Brotherhood of Locomotive Engineers,*
    398 U.S. 281 (1970) ................................................................................ 7, 8

*Baris v. Sulpicio Lines, Inc.,*
    74 F.3d 567 (5th Cir. 1996), affirmed *en banc* without opinion, 101 F.3d 367
    (5th Cir. 1996) ......................................................................................... 12

*Chick Kam Choo v. Exxon Corp.,*
    486 U.S. 140 (1988) ...........................................................................*passim*

*China Tire Holdings Ltd. v. Goodyear Tire & Rubber Co.,*
    91 F. Supp. 2d 1106 (N.D. Ohio) ............................................................ 17

*Civco Medical Instruments Co., Inc. v. Protek Medical Products, Inc.,*
    231 F.R.D. 555 (S.D. Iowa 2005) ........................................................... 24

*Cooter & Gell v. Hartmarx Corp.,*
    496 U.S. 384 (1990) ................................................................................ 25

*Davey v. Dolan,*
    453 F. Supp. 2d 749 (S.D.N.Y. 2006) .................................................... 21

*Davis Intern., LLC v. New Start Group Corp.,*
    488 F.3d 597 (3rd Cir. 2007) ................................................................. 16

*Delvalle v. Cedric Kushner Promotions,*
    2000 WL 1915808 (S.D.N.Y. Jan. 9, 2000) ......................................... 24

*Diabo v. Delisle*,
    2007 WL 2258811 (N.D.N.Y. Aug. 8, 2007) ........................................................ 18

*Dombrowski v. Pfister*,
    380 U.S. 479 (1965) ........................................................................................ 17

*Esposito v. Piatrowski*,
    223 F.3d 497 (7th Cir. 2000) .......................................................................... 24

*Fletamentos Maritimos, S.A. v. Maritima Albatros, S.A.*,
    944 F. Supp. 906 (S.D. Fla. 1996) ................................................................ 13

*Gilstrap v. Radianz*,
    443 F. Supp. 2d 474 (S.D.N.Y. 2006) ........................................................... 20

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947) ........................................................................................ 14

*Hutton Construction Co. v. Cty of Rockland*,
    1997 WL 291954 (S.D.N.Y. June 2, 1997) ....................................................... 18

*Irons, LLC v. Brandes*,
    2007 WL 495802 (D.D.C. Feb 15, 2007) ......................................................... 24

*Lacy v. Principi*,
    317 F. Supp. 2d 444 (SDNY 2004) ................................................................ 22

*Lawson v. Toney*,
    169 F. Supp. 2d 456 (M.D.N.C. 2001) ............................................................ 24

*MLE Realty Associates v. Handler*,
    192 F.3d 259 (2d Cir. 1999) ............................................................................ 18

*In re Martin-Trigona*,
    737 F.2d 1254 (2d Cir. 1984) ...................................................................... 19, 20

*In re Martin-Trigona*,
    737 F.2d at 122 .............................................................................................. 19

*In re Minister Papandreou*,
    139 F.3d 247 (D.C. Cir. 1998) ......................................................................... 12

*National Petro Chemical Co. of Iran v. M/T Stolt Sheaf*,
    930 F.2d 240 (TD. Cir. 1991) ........................................................................... 4

*Matter of Packer Avenue Associates*,
    884 F.2d 745 (3d Cir. 1989) ............................................................................ 19

*Pastewka v. Texaco, Inc.,*
   565 F.2d 851 (3d Cir. 1977) ............................................................ 17

*Punyee v. Bredimus,*
   2006 WL 488692 (N.D. Tex. Mar. 1, 2006)..................................... 16

*Rogers v. Wal-Mart Stores, Inc.,*
   230 F.3d 868 (6th Cir. 2000) ........................................................... 24

*Safir v. United States Lines, Inc.,*
   792 F.2d 19 (2d Cir. 1986)............................................................... 20

*Sathianathan v. Smith Barney, Inc,*
   2006 WL 538152 (S.D.N.Y. Feb. 24, 2006) .................................... 22

*Semtek International, Inc. v. Lockheed Martin Corp,*
   531 U.S. 497 (2001).......................................................................... 11

*Simeone v. First Bank Nat. Association,*
   125 F.R.D. 150 (D. Minn. 1989)...................................................... 24

*Smith v. Woosley,*
   399 F.3d 428 (2nd Cir. 2005) .......................................................... 18

*Staffer v. Bouchard Transport Co., Inc.,*
   878 F.2d 638 (2d Cir. 1989) ............................................................. 7

*V. by Versace Inc., v. Gianni Versace, S.p.A.,*
   126 F. Supp. 2d 328 (S.D.N.Y. 2001).............................................. 22

*Vasquez v. Bridgestone,*
   325 F.3d 665 (5th Cir. 2003) ...................................................9, 10, 11

*Villar v. Crowley,*
   990 F.2d 1489 (5th Cir. 1993) ......................................................... 17

*Wisconsin Right to Life, Inc. v. Federal Election Com'n,*
   542 U.S. 1305 (2004) ...................................................................... 18

*Zipfel v. Halliburton Co.,*
   861 F.2d 565 (9th Cir. 1988) ........................................................... 13

*Zucker v. Katz,*
   708 F. Supp. 525 (S.D.N.Y. 1989)................................................... 23

## STATE CASES

*Easter v. Technetics Management Corp.*,
    135 S.W.3d 821 (Tex. App. [1st Dist.] Houston, 2004, pet. granted, judgm't
    vacated w.r.m) ................................................................................................15, 16

*Exxon Corp. v. Choo*,
    881 S.W.2d 301 (Tex. 1994) ...........................................................................14, 16

*Gas Butano, S.A. v. Rodriguez*,
    375 S.W.2d 542 (Tex. Civ. App.—San Antonio 1964, no writ) .............................. 15

*Sarieddine v. Moussa*,
    820 S.W.2d 837 (Tex. App.—Dallas 1991, writ denied)......................................... 15

*Seung Ok Vee v. Ki Pong Na*,
    198 S.W.3d 492 (Tex. App.—Dallas 2006, no pet.)................................................. 15

*Van Winkle-Hooker Co. v. Rice*,
    448 S.W.2d 824 (Tex. Civ. App.—Dallas 1969, no writ)....................................... 15

## DOCKETED CASES

*Gilstrap v. Radianz Ltd.*,
    Case No. 06-cv-14218 (S.D.N.Y.) ........................................................................... 4

## FEDERAL STATUTES

28 U.S.C. §1920............................................................................................................ 24

All Writs Act, 28 U.S.C. §1651.................................................................................... 18

Anti-Injunction Act, 28 U.S.C. §2283 ..................................................................*passim*

Fed. R. Civ. P. 15(a) ...................................................................................................... 4

Fed. R. Civ. P. 41..............................................................................................23, 24, 25

## STATE STATUTES

Tex. Const., Art. I, § 13................................................................................................ 14

Tex. Civ. Prac. & Rem. Code Ann. § 71.051...........................................................14, 15

## MISCELLANEOUS

*Reply Mem. Of Law In Further Support of Defs.' Mot. To Dismiss the First Am. Class Action Compl. On Forum non conveniens Grounds* at 14 ................................ 21

9 C. Wright & A. Miller, Federal Practice and Procedure § 2375 (1971). ...................... 23

Texas Rules of Form, App. B (10th ed. 2003) ............................................................. 15

Plaintiffs Douglas Gilstrap and Myron Tataryn submit this response to the Court's Order to Show Cause of September 12, 2007.

## I. Introduction

What Defendants ask this Court to do is barred by the Anti-Injunction Act, plain and simple. No lesser authority than the United States Supreme Court has considered the precise question at issue here and ruled squarely against Defendants requested relief. Justice White, in his concurrence to the majority opinion in *Chick Kam Choo v. Exxon* summed up the law and the majorities holding neatly, stating:

> I agree with the Court that, as a general matter, "[f]ederal *forum non conveniens* principles simply cannot determine whether [state] courts, which operate under a broad 'open-courts' mandate, [will] consider themselves an appropriate forum" for a federal litigant's lawsuit. Ante, at 1691. Consequently, in diversity cases-for example-a district court's dismissal on *forum non conveniens* grounds cannot serve as a basis for a later injunction if the plaintiff subsequently brings the same action in a state court.

*Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 151 (1988).

It is astonishing that in the face of this direct, contrary precedent from the Supreme Court of the United States, Defendants nevertheless urge this Court to proceed. What is more, Defendants' brief[1] cites *zero* cases in which a federal court has *ever* entered an injunction against an ongoing state action because the federal court had dismissed a prior action on the basis of *forum non conveniens*. The only cases cited by Defendants that actually address that situation, and the one present here, *all* hold an injunction impermissible.

Defendants' disingenuousness is even more ironic considering their constant diatribe against Plaintiffs' litigation conduct. But Plaintiffs' actions have been above board at all times— in no way the type of conduct that merits an injunction or sanctions. Plaintiffs filed a class action in this Court because Radianz's headquarters were in New York and over a hundred putative

---

[1] Defendants' Memorandum of Law In Support Of Defendants' Motion For Injunctive Relief And Costs, filed September 12, 2007, referred to herein as "Defs.' Brief."

class members were from New York. When this Court dismissed that action, Plaintiffs fully litigated the appeal. Plaintiffs also brought and immediately stayed an action in their individual capacity to preserve limitations but were careful not to do anything that required Defendants to expend resources. After dismissing that case as of right, Gilstrap commenced a suit in his home state of Texas, where he lives and from where he had conducted business on Radianz's behalf. There is nothing, "vexatious," "inappropriate," or "peculiar" about these choices.[2] Excessive use of adjectives cannot cure the fatal flaw in Defendants' papers—direct, contrary authority from two Circuit Courts of Appeal and the Supreme Court of the United States forbidding this Court from enjoining Plaintiffs' state court litigation in Texas.

## II. <u>Procedural History</u>

Defendants' "relevant procedural history" is a misleading and conscious attempt to prejudice this Court against Plaintiffs by omitting important facts and mischaracterizing Plaintiffs' motives and the events which purportedly led to the filing of this motion. Plaintiffs only address those omissions and mischaracterizations relevant to their motion.

On November 11, 2005, Defendants represented in a joint filing with the Court that they intended to seek dismissal of Plaintiffs' claims on several grounds, including first and foremost, *forum non conveniens* grounds. *See* Status Report filed Nov. 11, 2005, at 6 (docket #6).

On November 18, 2005, the Court held a scheduling conference in chambers. Unfortunately, there is no transcript of these proceedings. During the conference, the Court let counsel know it was familiar with *forum non conveniens* issues and among other things, asked if counsel would proceed with the case in England if the case could not proceed in the United States. Counsel for Gilstrap gave a one word affirmative response and the Court responded by stating that "it would expect counsel to say nothing less." Defendants' trot out this meeting at

---

[2] Defs.' Brief at 1, 2, & 3.

every opportunity as if Plaintiffs somehow took a blood oath that they have now reneged. But Counsel's off the record comment, made prior to the filing of any motions, was never intended as a binding statement of Gilstrap's litigation strategy. And to the extent it represented Gilstrap's position at the time, much has changed since then. In November 2005, Gilstrap was employed by an English based company and often traveled to England. Just a few months later, Gilstrap's employment and travels to England ceased.

### A.    In December 2005, Plaintiffs Amend Their Complaint as of Right.

Defendants attempt to infer improper motives to actions taken by Plaintiffs as a matter of right and entirely appropriate under the Federal Rules of Civil Procedure. In mid-December 2005, prior to service of a responsive pleading, Gilstrap filed, as a matter of right pursuant to Federal Rules of Civil Procedure 15(a), an Amended Complaint splitting the existing putative class into two classes—a class of U.S. residents and a class of non-U.S. residents—and added at this time an additional class representative, Myron Tataryn ("Tataryn"), as a representative of the non-U.S. resident class. Gilstrap's objective was to provide the Court with the alternative of dismissing on *forum non conveniens* grounds the claims of one subclass without dismissing those of the other subclass. Defendants immediately began casting about for some improper motive in Plaintiffs' amendment.

### B.    The January 30, 2006 Motion to Dismiss.

Apparently because they were successful in making virtually the same arguments in their Motion to Dismiss, Defendants rehash many of their forum non arguments here as a basis for sanctions, including lengthy diatribes about the content of Plaintiffs' affidavits and briefs in response to Defendants' motion to dismiss. But Plaintiffs' response and supporting papers were entirely appropriate and represented their good faith belief of the issues that should be tried in this case and how they intended to prove the allegations in their Amended Complaint. The fact

this court viewed the case differently and focused more on witnesses and documents in England does not render Plaintiffs' submissions inappropriate or sanctionable.

On July 26, 2006 this Court granted Defendants' *Motion to Dismiss on Forum non conveniens*. On August 16, 2006, Plaintiffs requested a pre-motion conference with the Court prior to the filing of a motion for leave to file a Second Amended Complaint pursuant to Fed. R. Civ. P. 15(a) without the class action claim. *See* Fulton Affidavit, Ex. A. Plaintiffs do not dispute they withdrew the motion for leave to file a Second Amended Complaint. What Defendants purposely ignore is that Plaintiffs did so in response to Defendants' letter of August 21, 2006 advising Plaintiffs and the Court the proposed motion was procedurally defective.[3]

Plaintiffs responded to Defendants' letter by withdrawing the motion, thus minimizing litigation, and determined instead to file the Notice of Appeal on August 25, 2006. On August 29, 2006, Plaintiffs withdrew the motion and specifically informed the Court and Defendants that Gilstrap still intended to refile a complaint in his individual capacity in order to protect his limitations and other rights pending the appeal. *See* Fulton Affidavit, Ex. C.

Then, exactly as promised in the August 29 letter, on December 6, 2006 Gilstrap commenced a new and substantially different action in this Court. *See Gilstrap v. Radianz Ltd.*, Case No. 06-cv-14218 (S.D.N.Y.) (PKC) (the "individual New York action")[4]. This was an individual suit filed by Gilstrap and two other former Radianz executives, Brian Dillon and John

---

[3] Specifically, Defendants told the Court and the Plaintiffs that:

> First, the proposed motion is defective given the judgment has already been entered and there is thus no extant complaint to amend. Only if the Court were to first vacate or set aside its judgment under Rules 59 or 60, could Plaintiffs' proposed amendment be allowed. *See, e.g., Nat'l Petro Chemical Co. of Iran v. M/T Stolt Sheaf*, 930 F. 2d 240, 244 (TD. Cir. 1991). ("[O]nce a judgment is entered, the filing of an amended complaint is not permissible until judgment is set aside or vacated pursuant to Fed. R. Civ. P. 59(e) or 60(b)"). But Plaintiffs time to move under Rule 59 (*i.e.,* ten days from the entry of judgment) has long since elapsed and Plaintiffs have not expressed any intention to seek relief under Fed. Rule 60, nor could they satisfy their requirements necessary to obtain relief under that rule.

Fulton Affidavit, Ex. B.

[4] *See* Fulton Affidavit, Ex. F. (Civil Docket Sheet for case number 1:06-CV-14218-PKC).

Madigan.  All putative class allegations were removed, the tortious interference and breach of fiduciary duty claims were dropped, and all plaintiffs were United States citizens that worked for Radianz Americas in New York.  Nevertheless, at no point did Gilstrap abandon the putative class on whose behalf he still pursued the appeal.  In keeping with his stated goal of filing a second suit simply to protect limitations and other rights, Gilstrap immediately submitted to the Court, with the agreement of Defendants, a Stipulation and Order completely staying the individual New York action pending the appeal.  *See* Fulton Affidavit, Ex. D.  The Court entered the Stipulation on January 5, 2007.  In so doing, Gilstrap preserved his claims from limitations but didn't cause Defendants to expend any efforts to defend themselves.

### C.    The Dismissal Of The Individual New York Action.

The Second Circuit affirmed this Court's July 2006 opinion on May 25, 2007.  Shortly thereafter the parties entered into unsuccessful settlement discussions.  During that time period, Plaintiffs specifically discussed with Defendants their intention to continue pursuit of individual claims and in particular, the possibility of pursuit of those claims in Texas.  On July 31, 2007, Plaintiffs wrote Defendants the following:

> It is simply wrong to state that Gilstrap has lost his case.  He lost only the ability to pursue a class action in New York federal court on theories that implicated the defendants' intent.  We can disagree about the effect of the opinions in the class action on Gilstrap's ability to pursue his individual claims in New York or <u>Texas,</u> but <u>I think we can agree those opinions were not on the merits</u>.  Gilstrap's substantive claims are unaffected whether pursued in the United States or England.  In any event, we strongly disagree that there is anything in those opinions that address a forum non analysis of Gilstrap's claims as individually plead, <u>especially if brought in Texas</u> where he was employed by Radianz.

*See* Fulton Affidavit, Ex. G.[5]

---

[5] Plaintiffs redacted all but the quoted text because the letter was sent as a settlement communication. Plaintiffs would not have submitted even this to the Court but for Defendants misleading statements that Plaintiffs' dismissal of the individual action in New York "turned out to be merely another ploy." Defendants were aware that Gilstrap contemplated a suit in Texas weeks before it happened.

It is disingenuous for Defendants to imply that the voluntary dismissal of the individual suit before this Court was somehow an unexpected ploy.  Not only had Defendants requested the dismissal, Plaintiffs were in regular communication with Defendants and made clear that Gilstrap intended to continue to pursue his individual claims and that if it were not to be in New York, it would be in Texas.

### D.   The Texas Lawsuit.

Plaintiffs dismissed the individual suit before this Court on August 9, 2007.  Gilstrap chose to take advantage of his right to file suit in Texas as a matter of right on August 10, 2007, the day *after* he dismissed the case in New York, not the *same* day as Defendants falsely claim. The Texas lawsuit does not contradict Gilstrap's prior lawsuits before this Court and Defendants notably do not question the veracity of Gilstrap's statements that he lived in Texas, commuted from Texas to New York, or conducted Radianz's business from Texas. The Texas lawsuit breach of contract claims focus on those events that occurred in the United States.  The Texas lawsuit also adds venue and jurisdiction facts supporting maintenance of the suit in Texas in the sections labeled "Venue" and "Jurisdiction" that are a part of Texas state court petitions.  As Defendants are capable of knowing, Texas personal jurisdiction rules have little to do with federal *forum non conveniens* analysis. Plaintiffs have no explanation for Defendants' inability to comprehend that it's not inconsistent for Gilstrap to allege that Radianz is headquartered in New York, as he has done in every suit,[6] but that Gilstrap performed some of his responsibilities for Radianz from Texas during the period when he lived in Houston and commuted to Radianz's headquarters in New York. Gilstrap's jurisdictional allegations regarding the type and nature of Radianz's contacts with Texas are entirely consistent with Radianz being headquartered in New

---

[6] Compare Exhibits D, E, and N to Defs.' Brief; respectively the Class Action Complaint, First Amended Class Action Complaint, and Plaintiffs' Original Petition.

York, and Gilstrap conducting the bulk of Radianz's business from New York and do not contradict anything Plaintiffs have said before this Court.

### III. Argument

**A.    The Anti–Injunction Act Bars This Court From Enjoining Plaintiffs' Texas Action.**

The law governing the Court's decision on the Order to Show Cause is neither complicated nor disputed. The Anti-Injunction Act, 28 U.S.C. §2283 bars injunctions against state court actions and the case law shows that this case does not fall within any exception.

The Anti-Injunction Act, 28 U.S.C. §2283, states:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

The Anti-Injunction Act has three exceptions. Defendants' concede the first two exceptions, where "expressly authorized by Act of Congress," and "where necessary in aid of its jurisdiction" are not applicable. The third exception, called the "relitigation" exception, is used to "protect or effectuate [a court's] judgments." *See Chick Kam Choo v. Exxon*, 486 U.S. 140, 147 (1988). As the Second Circuit has recognized, the Supreme Court has admonished lower courts to refrain from enjoining state court proceedings unless absolutely necessary. *Staffer v. Bouchard Transp. Co., Inc.*, 878 F.2d 638, 644 (2d Cir. 1989) (citing *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 297 (1970)). And in light of the Supreme Court precedent on point, that caution is well advised in this case.

The relitigation exception applies only where the initial federal court judgment is collateral estoppel on a second state court action. Plaintiffs' state court action in this case is in Gilstrap's home state of Texas, so the only relevant question is whether a federal court can enjoin a second lawsuit in Texas state court after the federal court dismisses a case on *forum non conveniens* grounds. Two circuit courts of appeal and the U.S. Supreme Court have considered

that precise issue and all have answered with an unequivocal "No." The federal court cannot enjoin the state court in that case. This Court's *forum non conveniens* dismissal does not fall within the relitigation exception to the Anti-Injunction Act and this Court is barred from enjoining the Texas state court action.

### B.    The United States Supreme Court Ruled The Exact Type Of Injunction Sought Here Impermissible In *Chick Kam Choo v. Exxon*.

The United States Supreme Court addressed this issue with precision in *Chick Kam Choo v. Exxon,* 486 U.S. 140 (1988). The factual background of *Chick Kam Choo* should sound familiar. A federal court in Texas dismissed plaintiffs' original action on *forum non conveniens* grounds. Then, "[r]ather than commence litigation in Singapore, however, petitioner filed suit in the Texas state courts." *Id*. at 143-44. Defendants requested and received an injunction from the federal district court barring the Plaintiff from proceeding with the Texas state court action. The 5th Circuit affirmed, reasoning that "an injunction was necessary to prevent relitigation of the *forum non conveniens* issue because petitioner pointed to no additional factor that made the Texas court in Houston a more convenient forum for this litigation than a United States District Court in Houston."  *Id*. at 144 (internal citations and quotations omitted). The Supreme Court disagreed and reversed.

The Supreme Court recognized that in passing the Anti-Injunction Act, "Congress adopted a general policy under which state proceedings 'should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately this Court.'" *Id*. at 146 (quoting *Atlantic Coast Line R. Co. v. Locomotive Engineers*, 398 U.S. 281, 287 (1970)). The Supreme Court first noted the relitigation exception, "founded in the well-recognized concepts of *res judicata* and collateral estoppel," was "the only one even arguably applicable here." *Id*. at 146-7. Further, the Court stated that "an essential prerequisite for applying the relitigation exception is that the claims or

issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court." *Id.* at 148. Upon examination of the district court opinion dismissing the case on *forum non conveniens*, the Court observed that "the only issue decided by the District Court was that petitioner's claims should be dismissed under the federal *forum non conveniens* doctrine." *Id.* at 148.

The Supreme Court then held: "***Federal forum non conveniens principles simply cannot determine whether Texas courts, which operate under a broad 'open-courts' mandate, would consider themselves an appropriate forum for petitioner's lawsuit.***" *Id.* at 148 (emphasis added). And because "Texas courts would apply a significantly different *forum non conveniens* analysis," the issue of "whether the Texas state courts are an appropriate forum for petitioner's Singapore law claims has not yet been litigated, and an injunction to foreclose consideration of that issue is not within the relitigation exception." *Id.* at 149.

Justice White concurred and summed up succinctly:

I agree with the Court that, as a general matter, "[f]ederal *forum non conveniens* principles simply cannot determine whether [state] courts, which operate under a broad 'open-courts' mandate, [will] consider themselves an appropriate forum" for a federal litigant's lawsuit. Ante, at 1691. Consequently, in diversity cases-for example-**a district court's dismissal on *forum non conveniens* grounds cannot serve as a basis for a later injunction if the plaintiff subsequently brings the same action in a state court**.

*Id.* at 151 (emphasis added).

There can be no doubt then, that this Court cannot use the relitigation exception as a basis for enjoining the Texas state courts from determining whether Plaintiffs' claims may be heard in Texas.

**C.    Other Circuits Agree That Federal *Forum Non Conveniens* Dismissals Do Not Fall Within The Relitigation Exception.**

The Fifth and Ninth Circuits have followed the Supreme Court's holding in *Chick Kam Choo.* In *Vasquez v. Bridgestone*, 325 F.3d 665 (5th Cir. 2003) the non-Texas resident plaintiff

filed multiple federal and state actions in Texas against various groups of overlapping defendants. A federal court dismissed on *forum non conveniens* grounds, noting in its opinion that "'[a] judgment of dismissal under *forum non conveniens* here should act to preclude a future lawsuit brought elsewhere in this country.'" *Id*. at 670. After plaintiffs filed another new lawsuit in Texas state court, the same federal court issued an injunction "to protect the finality of its f.n.c. dismissal" that prohibited plaintiffs or their attorneys from filing or pursuing any additional lawsuits against the defendants in Texas state or federal court. *Id*. at 671. The Fifth Circuit reversed.

The Fifth Circuit observed that "[t]he district court determined that an f.n.c. dismissal is entitled to claim-preclusive effect as a final judgment on the merits, finding also that Texas state courts would apply the same choice-of-law rules and " virtually the same" f.n.c. test as a federal court." *Id*. at 676. But the Fifth Circuit then *completely rejected that conclusion*, stating: "We conclude that *an f.n.c. dismissal is not a decision on the merits*, so we direct the court to modify its injunction to prevent plaintiffs from relitigating only the choice-of-law determination." *Id*. (emphasis added).

The Fifth Circuit held that a *forum non conveniens* dismissal, "based on a doctrine 'of procedure rather than of substance,' does not resolve the substantive merits and therefore falls outside the relitigation exception." *Id*. at 677 (quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 453, (1994)) The 5th Circuit examined the Supreme Court decision in *Chick Kam Choo v. Exxon*, and observed that:

> *Chick Kam Choo* characterizes a dismissal based on federal f.n.c. principles as one not resolving the underlying substantive issues. 486 U.S. at 148, 108 S.Ct. 1684. The principle of f.n.c., as "nothing more or less than a supervening venue provision," *Am. Dredging*, 510 U.S. at 453, 114 S.Ct. 981, contemplates resolving the merits in another forum, negating the possibility of claim-preclusion. **Although an f.n.c. dismissal designated on the merits may bar reconsideration of the claims in another Texas federal court, it cannot**

> **forever bar the controversy from all American courts. To conclude otherwise would prevent states from deciding the openness of their courts.**

*Id*. at 679 (emphasis added).

Exactly like the Defendants in this case, the defendants in *Vasquez* sought "to distinguish *Chick Kam Choo* because Texas f.n.c. law has changed; they argue that today Texas would apply the same or even a less deferential standard than the federal f.n.c. standard, permitting application of the relitigation exception." *Id* at 679. But the 5th Circuit rejected that argument because it would "have the undesirable effect of varying the preclusive effect accorded a federal f.n.c. dismissal based on the law of the interpreting state." *Id*. This Court should likewise reject that argument. This decision makes clear that this Court cannot enjoin state court litigation in Texas whether brought by Gilstrap, a Texas resident, or Tataryn, a non-resident, as the *Vasquez* plaintiffs were all non-residents.

Defendants in this case also pretend that the *Vasquez* court simply got it wrong and that the preclusive effect of the federal non conveniens dismissal does vary with the law of the state at issue. But not only do Defendants fail to cite a single case criticizing *Vasquez* on that basis, they also ignore the *Vasquez* court's careful analysis and comparison of *Chick Kam Choo* to the more recent Supreme Court decision in *Semtek Int'l, Inc. v. Lockheed Martin Corp*, 531 U.S. 497 (2001). As *Vasquez* explains, under *Semtek*, the court should "look to the longstanding rule that 'federal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity.'" *Vasquez* at 679 (quoting *Semtek* at 508). And that "the type of federal common law applied to a federal procedural dismissal, unlike a dismissal based on state substantive law, does not incorporate state law" *Vasquez* at 679 (citing *Semtek* at 508). Therefore, "*Chick Kam Choo*'s observation regarding the differences between the Texas "open courts" policy and federal f.n.c. law serves only to emphasize the likelihood of a different result in state court." *Vasquez* at 680.

The Fifth Circuit came to the same conclusion in the earlier case of *Baris v. Sulpicio Lines, Inc.*, 74 F.3d 567 (5th Cir. 1996), affirmed *en banc* without opinion, 101 F.3d 367 (5th Cir. 1996). In *Baris*, the Fifth Circuit affirmed the district court's refusal to enjoin a Louisiana state proceeding because of the federal district court's prior dismissal on *forum non conveniens*. Again, just like Defendants here, the defendants in *Baris* argued that the *forum non conveniens* dismissal, which included stipulated conditions regarding submitting to the foreign jurisdiction, "precludes the plaintiffs from litigating their claims in any court, state or federal, in the United States." *Id.* at 570. The Fifth Circuit acknowledged that the relitigation exception to the Anti-Injunction Act turned on principles of *res judicata* and further held that "*res judicata* acts as a bar to a subsequent suit when the resolution of the initial proceeding has been 'on the merits,' which suggests that the substantive claims have been addressed by the court." *Id.*

But, acknowledging the Supreme Court's then recent determination that "[t]he common law venue rule of f.n.c., by contrast, is a doctrine ' of procedure rather than substance,'" the Fifth Circuit held that "considering the basic nature of the f.n.c. doctrine, we cannot regard such an f.n.c. dismissal as "on the merits" for *res judicata* purposes as to the entire claim." *Id.* at 570, 572 (quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 453 (1994)).[7] The Fifth Circuit concluded that for these reasons, "the limited nature of the f.n.c. ruling cannot serve to bar the plaintiffs' claims forever from U.S. courts" and that "[i]t would be improper for this court to preclude plaintiffs from pursuing their claims in Louisiana state court based solely upon a prior federal court dismissal on f.n.c. grounds." *Id.* at 573.[8] The Ninth Circuit joins the Fifth with its decision

---

[7] In *American Dredging Co. v. Miller*, 510 U.S. 443, 453 (1994),the Court stated: "as state courts, in deciding admiralty cases, are not bound by the venue requirements set forth for federal courts in the United States Code, so also they are not bound by the federal common-law venue rule (so to speak) of forum non conveniens. Because the doctrine is one of procedure rather than substance, . . ."

[8] The Second Circuit has also found forum non conveniens dismissals to be a decision not on the merits. *See In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak*, 311 F.3d 488, 498 (2d Cir. 2002) ("Forum non conveniens does not raise a jurisdictional bar but instead involves a deliberate abstention from the exercise of jurisdiction. . . . it is as merits-free as a finding of no jurisdiction." (quoting *In re Minister Papandreou*, 139 F.3d 247, 255-56 (D.C. Cir. 1998)).

in *Zipfel v. Halliburton Co.*, 861 F.2d 565 (9th Cir. 1988). In *Zipfel*, it recalled and amended its prior decision in light of *Chick Kam Choo* to make clear that a district court in California could not enjoin subsequent state court litigation in Texas on the grounds that it had dismissed the federal court action on *forum non conveniens* grounds. *Id*. at 570.

The Southern District of Florida also refused to enjoin a state court proceeding in *Fletamentos Maritimos, S.A. v. Maritima Albatros, S.A.*, 944 F. Supp. 906 (S.D. Fla. 1996). After the Florida Supreme Court "abandoned its prior approach to *forum non conveniens*, and adopted the federal standard," the defendants sought an injunction before the federal court where they had won a *forum non conveniens* dismissal to stop a second state court action. Like this case, defendants in *Fletamentos* predictably claimed that "*Chick Kam Choo* is distinguishable, . . . because there the Texas courts applied a different *forum non conveniens* doctrine than the federal courts. In the present case, by contrast, the Florida Supreme Court has expressly adopted the federal standard." *Id*. at 908. The district court rejected that claim because Florida had not "adopt[ed] all federal decisions respecting *forum non conveniens*," and so "the doctrines of *res judicata* and collateral estoppel may not be invoked to prevent "relitigation" of an issue that this Court never addressed: the propriety under Florida law of *forum non conveniens* dismissal of the claims against the Spanish defendants." *Id*.

The conclusion is obvious. Court after court has considered the precise issue facing this Court and held time and again that when the federal court has issued a *forum non conveniens* dismissal, the relitigation exception does not apply and the Anti-Injunction Act bars a federal court from enjoining a second state court action. Thus, whether as to Gilstrap, Tataryn or any of the other named or unnamed individuals in the cases before this Court or the Texas courts, this Court is prohibited from enjoining them from pursuing other litigation in state court because this Court's *forum non conveniens* decision does not grant it that power.

**D.    Texas Courts Do Not Apply The Same *Forum Non Conveniens* Standard As Federal Courts.**

Defendants attempt to lure this Court into action with the soothing but false notion that Texas state courts apply the same *Gilbert* analysis that this Court has already applied and therefore this Court can enjoin the Texas courts from even needlessly considering Gilstrap's claim in Texas.[9]

But Defendants are wrong in claiming that Texas courts simply mimic the federal *forum non conveniens* analysis for undisputed Texas residents such as Gilstrap or that Texas courts would give preclusive effect to a federal *forum non conveniens* dismissal—they don't. *Exxon Corp. v. Choo*, 881 S.W.2d 301, 305-306 & n.9 (Tex. 1994) ("federal *forum non conveniens* may not preempt the *forum non conveniens* analysis of a state court"). Texas courts evaluating *forum non conveniens* motions look to the Texas Constitution to provide the standard for determining whether an action should proceed in Texas. They begin with the provision of the Texas Constitution that "All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." Tex. Const., Art. I, § 13. This "open courts" mandate is well recognized as being a different standard than that used by federal courts. *Chick Kam Choo*, 468 U.S. at 148.

The Texas Civil Practice and Remedies Code ***prohibits*** *forum non conveniens* dismissal for personal injury or wrongful death claims if the plaintiff is a Texas resident. *See* Tex. Civ. Prac. & Rem. Code Ann. § 71.051(e) ("The court may not stay or dismiss a plaintiff's claim under Subsection (b) if the plaintiff is a legal resident of this state."). Subsection (b), referenced in subsection (e) is the codification of *Gilbert* factors but it only applies to personal injury cases

---

[9] *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947).

where the Plaintiff *is not* a legal resident of Texas. *See* Tex. Civ. Prac. & Rem. Code Ann. § 71.051(e), (h).[10]

The law governing Texas residents' absolute right to proceed in Texas does not stop with personal injury. Texas courts have held that:

> In precluding dismissal of a Texas resident's claims, section 71.051(e) **echoes settled common law that upholds the absolute right of Texas residents to sue in Texas courts**. *See Van Winkle-Hooker Co. v. Rice*, 448 S.W.2d 824, 827-28 (Tex. Civ. App.—Dallas 1969, no writ) (holding that trial court erred by dismissing breach of contract claims by Texas resident on grounds of *forum non conveniens*); *Gas Butano, S.A. v. Rodriguez*, 375 S.W.2d 542, 543-44 (Tex. Civ. App.—San Antonio 1964, no writ) (holding that trial court did not err by denying motion of nonresident Mexican corporation to dismiss claims of Texas resident on grounds of *forum non conveniens*); *see also* TEX. CONST. art. 1, § 13 ("open courts" provision).

*Easter v. Technetics Mgmt. Corp.*, 135 S.W.3d 821, 825-6 (Tex. App. [1st Dist.] Houston, 2004, pet. granted, judgm't vacated w.r.m)[11] (reversing dismissal on *forum non conveniens* in case for wrongful discharge on grounds that "[b]ecause Easter's status as a Texas resident was thus undisputed, the settled prohibition against dismissing the claims of a Texas resident barred the trial court from granting Technetics' motion to dismiss on forum-non-conveniens grounds").

Defendants' cases cited to show that Texas uses the federal *Gilbert* analysis for Gilstrap's claims are utterly irrelevant. In *Seung Ok Vee v. Ki Pong Na*, the plaintiff was a Korean National and not a resident of Texas. 198 S.W.3d 492 (Tex. App.—Dallas 2006, no pet.). And in *Sarieddine v. Moussa*, the plaintiff was a Lebanese citizen residing in state of Washington. 820 S.W. 2d 837 (Tex. App.—Dallas 1991, writ denied). The fact that Texas has utilized the *Gilbert*

---

[10] Tex. Civ. & Rem. Code Ann. § 71.051(e) provides that "If an action involves both plaintiffs who are legal residents of this state and plaintiffs who are not, the court may not stay or dismiss the action under Subsection (b) if the plaintiffs who are legal residents of this state are properly joined in the action and the action arose out of a single occurrence." Gilstrap is indisputably properly joined. To the extent this section codifies common law, the Texas state court action is entitled to proceed in Texas under Texas forum non conveniens law.

[11] Texas citation rules require inclusion of the Texas Supreme Court's response to the case. The notation "pet. granted, judgm't vacated w.r.m." simply indicates that pursuant to Tex. R. App. P. 56.2 the parties settled the dispute and the Texas Supreme Court vacated the judgment only and remanded without reference to the merits to allow the settlement. The opinion of the Court of Appeals is not vacated and has precedential value. *See* Texas Rules of Form, App. B (10th ed. 2003).

factors in evaluating *forum non conveniens* issues for cases brought by non-residents of Texas is of no value in determining how a Texas court would resolve a *forum non conveniens* motion against Gilstrap, a Texas citizen and resident. To the contrary, Gilstrap would be entitled to Texas' "settled prohibition against dismissing the claims of a Texas resident" on *forum non conveniens* grounds. *Easter*, 135 S.W.3d at 826.[12]

### E.    Defendants Cite Zero Cases That Do What They Ask This Court To Do.

Defendants' brazenly claim "the majority of courts to consider the issue have found that direct or collateral estoppel applies to a fully litigated *forum non conveniens* determination." Defs.' Brief at 19. Of course, Defendants' neglect to mention that the Texas Supreme Court happens to be part of the purported "minority" that has held that a federal *forum non conveniens* decision does not preempt the *forum non conveniens* analysis of a state court. *Exxon Corp. v. Choo*, 881 S.W.2d 301, 305-306 & n.9 (Tex. 1994). It is no surprise then that every case Defendants cite is one where a ***federal*** court gave collateral estoppel to a *forum non conveniens* dismissal by ***another federal*** court. Not one case applies the relitigation exception to the Anti-Injunction Act to enjoin an ongoing state court action and not one involves a ***state court,*** much less a Texas state court, giving estoppel effect or *res judicata* to a federal *forum non conveniens* dismissal. Consider Defendants' cases:

- *Davis Intern., LLC v. New Start Group Corp.*, 488 F.3d 597 (3rd Cir. 2007). The Third Circuit affirmed a federal court dismissal in Delaware based on collateral estoppel because the plaintiff had been dismissed on *forum non conveniens* in an earlier suit in the Southern District of New York.

- *Punyee v. Bredimus,* 2006 WL 488692 *1 (N.D. Tex. Mar. 1, 2006). Plaintiff, a citizen and resident of Thailand, dismissed on *forum non conveniens* grounds in the Northern District of Texas, filed a second suit in Texas state court and was removed to federal

---

[12]    For similar reasons, Defendants attempts to dismiss *Chick Kam Choo v. Exxon* as only applying to those cases involving personal injury or death is equally wrong. As Justice White pointed out, the Court held broadly that "a district court's dismissal on forum non conveniens grounds cannot serve as a basis for a later injunction if the plaintiff subsequently brings the same action in a state court." The wrongful death statute bars dismissal of a Texas resident's wrongful death claim on forum non conveniens grounds. It is a reflection of the longstanding Texas constitutional right of Texas residents to bring claims in Texas courts.

court. The second federal court dismissed on estoppel grounds because of the prior federal court ruling. No mention that a state court in Texas would give preclusive effect to the federal decision.

- *Pastewka v. Texaco, Inc.,* 565 F.2d 851 (3d Cir. 1977). Second federal court in Delaware dismissed an action on estoppel grounds because of prior New York federal court's *forum non conveniens* dismissal.

- *Amore ex rel. Estates of Amore v. Accor, S.A.,* 484 F. Supp. 2d 124, 128-130 (D.D.C. 2007) Second federal court in the District of Columbia dismissed an action on estoppel grounds because of prior New York federal court's *forum non conveniens* dismissal.

- *China Tire Holdings Ltd. v. Goodyear Tire & Rubber Co.,* 91 F. Supp. 2d 1106, 1110-11 (N.D. Ohio) Second federal court in Ohio dismisses an action on estoppel grounds because of prior California federal court's *forum non conveniens* dismissal.

The only case cited by Defendants that merits even cursory examination is the Fifth Circuit's decision in *Villar v. Crowley*, 990 F.2d 1489, 1498 (5th Cir. 1993). *Villar* predates *Baris v. Sulpicio Lines, Inc.* in 1996 and *Vasquez v. Bridgestone* in 2003 so if it was on point, it would likely be overruled. But it does not contradict either case because in *Villar* "there [was] no ongoing state court proceeding." *Id.* at 1499. And because "'[the Anti-Injunction Act] and its predecessors do not preclude injunctions against the institution of state court proceedings, but only bar stays of suits already instituted'" then "as long as the federal court acts before the plaintiff has commenced the state court proceeding, a federal court can enjoin a state court." *Id.* at 1499 (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 484 n. 2 (1965)). On that basis *Villar* ruled the Anti-Injunction Act and *Chick Kam Choo* inapplicable. The fact that *Villar* affirmed a federal court in Texas' *forum non conveniens* dismissal in part on the basis of a prior California federal court's forum non dismissal is true but completely irrelevant because in this case there is an ongoing state court proceeding in Texas and the Anti-Injunction Act controls.

In addition to the many citations to unrelated cases on collateral estoppel, Defendants also include a selection of cites from other cases regarding the Anti-Injunction Act. These cases

have no bearing on the Court's decision here as not one involves *forum non conveniens*. Consider Defendants' cases:

- Smith v. Woosley, 399 F.3d 428 (2nd Cir. 2005). Case regarding an action to terminate parental rights. No *forum non conveniens* issues.

- MLE Realty Assocs. v. Handler, 192 F.3d 259 (2d Cir. 1999). Case involving a state court champerty action. No *forum non conveniens* issues.

- Hutton Constr. Co. v. Cty of Rockland, 1997 WL 291954, *2 (S.D.N.Y. June 2, 1997). Case involving a legal malpractice claim. No *forum non conveniens* issues.

- Diabo v. Delisle, 2007 WL 2258811, *4 (N.D.N.Y. Aug. 8, 2007). Case involving international child custody dispute. No *forum non conveniens* issues.

Defendants offer this Court no support and no law that supports the relief they demand. Even a peek behind the slew of disingenuous quotes and cites to the actual cases reveals that every case they cite is irrelevant to this decision. The law interpreting and applying the Anti-Injunction Act is clear—this Court may not and should not enjoin Plaintiffs' Texas state court action.

### F.    The Facts Of This Case Do Not Merit An Injunction Under The All Writs Act.

Even if the Anti-Injunction Act did not exist to prohibit this Court from enjoining Plaintiffs' Texas state court action, the facts of this case do not merit an injunction under the All Writs Act, 28 USC §1651.[13] The Supreme Court has stated that the authority granted to courts under the All Writs Act is to be used "sparingly and only in the most critical and exigent circumstances." *Wisconsin Right to Life, Inc. v. Federal Election Com'n*, 542 U.S. 1305, 1306 (2004) (internal citations and quotations omitted). And that a court should exercise its authority under the All Writs Act only (1) when necessary or appropriate in aid of court's jurisdiction; and (2) when legal rights at issue are indisputably clear. *Id*. at 1306. But as the analysis in the Anti-

---

[13] The statute states in pertinent part that
    The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law
28 USC §1651(a).

Injunction section above makes plain, the only legal rights that are indisputably clear is Plaintiffs' rights to proceed before the Texas state courts.

Defendants correctly point out that the All Writs Act exists in part to allow courts to prevent the filing of meritless cases identical to those that have already been adjudicated. *See* Defs.' Brief at 12 (citing *In re Martin-Trigona*, 737 F.2d 1254 (2d Cir. 1984). But they fail to acknowledge that it is an "extreme remed[y] and should be narrowly tailored and sparingly used." *Matter of Packer Ave. Associates*, 884 F.2d 745, 747 (3d Cir. 1989). More importantly, it should not serve as simply another litigation tactic designed to prevent the merits of a dispute from ever being heard in the first place—which is clearly Defendants' goal.

Defendants claim that Plaintiffs' pursuit of a second lawsuit in Gilstrap's home state of Texas is so outrageous, so frivolous, and so vexatious that it merits an injunction enjoining him and every other class member from ever filing a lawsuit in the United States. But Defendants' claim that Gilstrap is the sort of litigant who "abuses the process of the courts to harass and annoy others with meritless, frivolous, vexatious"[14] proceedings falls flat when the Court looks at the facts and compares them to the facts of the cases Defendants cite.

As detailed in the procedural history of this case, Gilstrap filed a class action lawsuit in this Court in 2005. After this Court dismissed that action on the procedural ground of *forum non conveniens*, Gilstrap and others brought and immediately stayed a second lawsuit in his individual capacity in front of this Court for purposes of preserving limitations. *See* Fulton Affidavit, Ex. C. Then, upon consideration of this Court's opinion and the Second Circuit's affirmance, Gilstrap dismissed his individual lawsuit before this Court and filed a lawsuit in his home state of Texas. That is the sum total of Gilstrap's litigation. Yet Defendants argue this case is comparable to *In re Martin-Trigona*, 737 F.2d 1254 (2d Cir. 1984), a case where the plaintiff

---

[14] *See* Defs.' Brief at 12 (quoting *In re Martin-Trigona*, 737 F.2d at 122).

was a pro se litigant who had filed "literally hundreds of lawsuits, motions and miscellaneous pleadings, all but a small fraction of which lack any merit whatsoever" and whose purpose in filing lawsuits was "as a vehicle to launch vicious attacks upon persons of Jewish heritage" *Id* at 1256. Gilstrap bears no resemblance to that case. Or that it compares to *Safir v. United States Lines, Inc.*, the case from which Defendants draw the factors for considering an injunction under the All Writs Act. 792 F.2d 19 (2d Cir. 1986). In *Safir*, the plaintiff filed **eleven** federal court actions over a **20 year period** on the same issues.[15] None of the *Safir* factors weighs in favor of an injunction.

      1.    The litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits.

Gilstrap's history of litigation shows no pattern of vexatious, harassing, or duplicative lawsuits. Gilstrap has filed lawsuits in a grand total of two courts, the Southern District of New York and the state court in Texas. He has appropriately litigated these suits, responding to this Court's dismissal on federal *forum non conveniens* grounds by filing suit in Texas, a state in which he is unquestionably a citizen and resident.

      2.    The litigant's motive in pursuing the litigation, *e.g.*, does the litigant have an objective good faith expectation of prevailing?

Gilstrap's motive for pursuing the litigation is appropriate—Defendants' wrongfully deprived him of millions of dollars—and he has a clear expectation of prevailing. As discussed above, Texas provides open courts to its residents and Gilstrap is entitled as a citizen of the state of Texas to take advantage of that protection. Even this Court pointed out that Gilstrap resides in Texas and that his suit in New York was not in his home district. *Gilstrap v. Radianz*, 443

---

[15] The factors identified in *Safir* are

    (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

792 F.2d at 24.

F.Supp. 2d 474, 478 (S.D.N.Y. 2006). And Defendants accused Gilstrap of forum shopping by filing in New York while he resided in Texas. *See Reply Mem. Of Law In Further Support of Defs.' Mot. To Dismiss the First Am. Class Action Compl. On Forum Non Conveniens Grounds* at 14 (filed March 20, 2006).

        3.       Whether the litigant is represented by counsel.

Gilstrap has been and continues to be represented by counsel with substantial litigation experience. Defendants have yet to cast aspersions on Plaintiffs' counsel.

        4.       Whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel.

Defendants' claim that Gilstrap has caused needless expense is nonsensical. Defendants state that Gilstrap's filing and pursuit of his ***initial*** lawsuit somehow constitutes needless expense. They claim that Gilstrap's "amendments to the pleadings," "opposition papers," and "affidavits" constitute costs that should have been avoided. Defs.' Brief at 15. All of Gilstrap's pleadings and motions have been permissible under the rules and indeed it is unbelievable that Defendants would accuse Gilstrap of creating needless expense because he filed "opposition papers" to their motion to dismiss. Defendants purported authority is irrelevant.[16]

As to Gilstrap's individual action filed before this Court during the pendency of the appeal of the dismissal of the class action suit, Gilstrap agreed to stay the matter at the outset before Defendants did anything and then later dismissed the claim. As to Gilstrap's Texas state court matter, Gilstrap generously gave Defendants an extension to their response date, which they then used to file the brief that led to this order, so they have as yet to expend any resources in that suit either.

---

[16] Defendants cite *Davey v. Dolan*, 453 F.Supp.2d 749, 756 (S.D.N.Y. 2006). In *Davey* the plaintiff filed nine state court lawsuits related to the dissolution of his marriage, including a suit against the divorce judge and New York state.

>    5.    Whether other sanctions would be adequate to protect the courts and other parties.

Defendants provide no justification for why even sanctions are appropriate much less why they would not be adequate were they warranted, which clearly they are not. Both of their cited cases bear no resemblance to the facts here. In *Sathianathan v. Smith Barney, Inc*, 2006 WL 538152 (S.D.N.Y. Feb. 24, 2006), a pro se plaintiff filed eight separate lawsuits in various forums including multiple different federal courts and arbitration. And in *Lacy v. Principi*, 317 F.Supp. 2d 444, 449 (S.D.N.Y. 2004), a pro se plaintiff filed four federal court lawsuits on the same discrimination claim.

### G.    This Court Cannot Modify Its Opinion To Preclude Texas Litigation.

In a last desperate argument, Defendants urge this Court to modify its July 2006 order to somehow bar Plaintiffs from litigating in the United States. The idea is ridiculous. The Supreme Court has clearly held that federal court dismissals on *forum non conveniens* grounds cannot support an injunction against a subsequent state court action and no change in verbiage can alter the limited effect of this Court's dismissal. *See* section III.A-C, *supra*; *Chick Kam Choo v. Exxon*, 486 U.S. 140, 148 (1988).[17]

### H.    The Court Should Not Award Costs Under Rule 41 Or Its Inherent Authority.

The Court should reject Defendants' request for costs under Rule 41(d)[18] or under its inherent authority for Gilstrap's Rule 41(a)(1) dismissal of his individual suit, civil action number 06-CV-14218. While Rule 41(d) allows the imposition of costs in certain circumstances,

---

[17] Defendants cases are inapposite. In *V. by Versace Inc., v. Gianni Versace, S.p.A.*, 126 F.Supp. 2d 328, 334 (S.D.N.Y. 2001), the court clarified a preliminary injunction in a Lanham Act dispute, and in *Antonmarchi v. Con Edison,* 2005 WL 3358595, *4 (S.D.N.Y. Dec. 8, 2005), a court modified a discovery order regarding the use of discovery materials. These cases have nothing to do with the All Writs Act, res judicata, collateral estoppel or any other relevant issue.

[18] Rule 41(d) states:

>    If a plaintiff who has once dismissed an action in any court commences an action based upon or including the same claim against the same defendant, the court may make such order for the payment of costs of the action previously dismissed as it may deem proper and may stay the proceedings in the action until the plaintiff has complied with the order.

it is discretionary with the Court, and Courts may refuse to impose costs "if it appears that there was a good reason for the dismissal of the prior action." *Zucker v. Katz*, 708 F.Supp. 525, 539 (S.D.N.Y. 1989) (quoting 9 C. Wright & A. Miller, Federal Practice and Procedure § 2375 at 244 (1971)).

The procedural history of this case demonstrates that not only did Gilstrap go to great lengths to insure Defendants did not incur any costs or other expenses responding to the individual suit, but the Defendants admit they incurred none. Furthermore, Gilstrap had good reason for dismissing his individual action before this Court and should not be penalized for doing so.

Gilstrap, Dillon, and Madigan filed the individual lawsuit on December 7, 2006. But before Defendants responded to the case in any way, Gilstrap agreed to stay the action to prevent the Defendants from incurring any fees or costs and entered an agreed order to that effect. *See* Fulton Affidavit, Ex. D (the parties, with the approval of the Court, agreed to "postpone any litigation relating to the New Complaint until after the pending appeal of the Class Action has been decided by the United States Court of Appeals for the Second Circuit."). The individual lawsuit came as no surprise because Gilstrap had informed the Defendants and the Court three months earlier that he "intend[ed] to refile his complaint in his individual capacity in order to protect his limitations and other rights pending the appeal." *See* Fulton Affidavit, Ex. C. On August 9, 2007, Plaintiffs filed a notice of dismissal pursuant to Fed. R. Civ. P. 41(a)(1), dismissing the case of right. These are not the actions of Plaintiffs looking to engage in vexatious or harassing litigation.

Defendants do not allege that they have incurred any costs in response to the second suit because indeed the record shows they have none. The docket for case number 06-CV-14218 indicates the Defendants never filed a single motion or an answer. *See* Fulton Affidavit, Ex. F.

Furthermore, Defendants admitted in a letter to this Court on July 16, 2007 that they had asked Plaintiffs to "withdraw their complaint before defendants incur any additional legal expenses litigating this dispute." *See* Fulton Affidavit, Ex. E. There are simply no costs arising from the individual lawsuit to be awarded to Defendants in any event. [19]

Defendants appear to be indicating they believe the Court should also award them some measure of attorney's fees as costs under Rule 41(d) even though they submit no evidence that they have incurred any attorneys' fees or costs in the dismissed action and the record of the case doesn't show how they could have. But other than a few outlier district court opinions, the vast majority of Courts, including the 6th and 7th Circuit Court of Appeals, that have considered whether Rule 41(d) allows an award of attorney's fees have determined that it does not. *See Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868 (6th Cir. 2000) (holding attorneys' fees not available under Rule 41(d)); *Esposito v. Piatrowski*, 223 F.3d 497 (7th Cir. 2000) (finding attorney's fees not recoverable under Rule 41(d) unless underlying statute that is basis of original action permits recovery of fees as costs); *Simeone v. First Bank Nat. Ass'n*, 125 F.R.D. 150 (D. Minn. 1989) (finding attorney's fees are not recoverable as part of "costs" under Rule 41(d)); *Civco Medical Instruments Co., Inc. v. Protek Medical Prods., Inc.*, 231 F.R.D. 555 (S.D. Iowa 2005) (same); *Anders v. FPA Corp.*, 164 F.R.D. 383, 390 (D.N.J. 1995) (same); *Lawson v. Toney*, 169 F. Supp. 2d 456 (M.D.N.C. 2001) (same); *Irons, LLC v. Brandes*, 2007 WL 495802, *1 (D.D.C. Feb 15, 2007) (same).

Defendants also concede that the only case they could find that actually involves the facts here—a federal court dismissal followed by a second suit in state court and a defendant that then returned to the initial federal court asking for Rule 41(d) costs—goes against them. The Court in *Delvalle v. Cedric Kushner Promotions*, 2000 WL 1915808 (S.D.N.Y. Jan. 9, 2000) held it could

---

[19] 28 USC §1920 indicates the list of items that constitute recoverable costs available to Defendants and the list makes clear none were incurred in the course of case number 06-CV-14218.

not award costs where the second suit was in state court, not federal court. Contrary to Defendants' claims, the case doesn't conflict with *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) because *Cooter & Gell* held that a Rule 41(a)(1) dismissal does not deprive a court of jurisdiction to enter Rule 11 sanctions, not Rule 41(d) costs. Every other case cited by Defendants involves a second suit in federal court, which is not the case here.

The Court should likewise not impose sanctions under its inherent authority. Plaintiffs have done nothing to abuse the litigation process or merit sanctions. Plaintiffs have done nothing more than ask a Texas state court to hear their dispute, a request the United States Supreme Court says they are entitled to pursue without federal court interference. The imposition of sanctions against Plaintiffs for filing suit in Gilstrap's home state of Texas after this Court declined to hear the case on federal *forum non conveniens* standards can hardly be the type of conduct that merits sanctions. This Court should deny Defendants' request.

## IV. <u>Conclusion</u>

This Court need look no further than the United States Supreme Court's decision in *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140 (1988) for the answer. The Supreme Court held that a federal court dismissal on *forum non conveniens* grounds could not serve as the basis for an injunction against a subsequent state court action. That law is binding and absolutely on point. Plaintiffs respectfully request this Court deny all relief that Defendants seek and not enjoin or sanction Plaintiffs in any manner.

Dated: September 28, 2007

Respectfully submitted,

/s/ Stephen D. Susman
Stephen D. Susman - 3041712
Attorney-In-Charge
ssusman@susmangodfrey.com
SUSMAN GODFREY L.L.P.
590 Madison Avenue, 8th Floor
New York, NY 10022-8521

Telephone: (212) 336-8330
Facsimile: (212) 336-8340

OF COUNSEL:
Stuart V. Kusin
skusin@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Jason P. Fulton
jfulton@susmangodfrey.com
SUSMAN GODFREY L.L.P.
901 Main Street, Suite 5100
Dallas, Texas 75202-3775
Telephone: (214) 754-1900
Facsimile: (214) 754-1933

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2007, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of New York, using the electronic filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means. The foregoing document was also served by electronic mail and hand delivery:

Jonathan D. Polkes
Richard A. Rothman
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

/Stuart V. Kusin/
Stuart V. Kusin